# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| BECKY S. MANGRICH,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No. C15-2002-LTS<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

---

Plaintiff Becky S. Mangrich seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Mangrich contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.


## I.      BACKGROUND

Mangrich was born in 1964, completed twelve years of schooling and did not attend special education classes. AR 219, 368. She has previously worked as a cashier self-service. AR 32. The Administrative Law Judge (ALJ) determined that she was capable of performing this past work, as well as other work that exists to a significant extent in the national economy such as final assembler, addresser and charge clerk. AR 32-33.

Mangrich filed her application for DIB on August 18, 2011, alleging a disability onset date of April 26, 2011. AR 20, 176. She contends that she is disabled due to degenerative disc disease of the lumbar spine, status post cervical spine fusion, migraines and depression. AR 22. Mangrich's claims were denied initially and on reconsideration. AR 20. She then requested a hearing before an ALJ. ALJ Julie Bruntz conducted a video hearing on May 9, 2013, AR 13, and issued a decision denying Mangrich's claim on July 22, 2013. AR 17.

Mangrich sought review by the Appeals Council, which denied review on November 19, 2014, AR 1, leaving the ALJ's decision as the final decision of the Commissioner. On January 21, 2015, Mangrich filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. On February 24, 2015, with the consent of the parties (Doc. 6), the Honorable Linda R. Reade transferred this case to me for final disposition and entry of judgment. The parties have now briefed the issues and the matter is fully submitted.

## II.   *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th

Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." *Id*. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since April 26, 2011, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post cervical spine fusion, migraines and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant could occasionally climb ramps and stairs but should never climb ladders, ropes and scaffolds. The claimant could occasionally balance, stoop, kneel, crouch and crawl. The claimant would need to avoid concentrated exposure to extreme cold and hazards (such as unprotected heights and dangerous machinery). The claimant is limited to simple, routine and repetitive tasks. The claimant would need to alternate between standing and sitting every 30 minutes while remaining on task.

6. The claimant is capable of performing past relevant work as a cashier self-service (DOT 211.462-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from April 26, 2011 through the date of this decision (20 CFR 404.1520(f)).

AR 23-34.

## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Mangrich argues the ALJ's decision is flawed for three reasons:

1.  The ALJ's RFC assessment is flawed as the ALJ failed to give proper weight to the opinions of Jonathan Hennings, ARNP, and Doug Keiser, MPT.

2.  The ALJ's RFC assessment is flawed as it is not supported by work-related limitations from a treating or examining source.

3.  The ALJ failed to properly assess Mangrich's subjective allegations.

I will address each argument separately.

*A.*     *Overview of the RFC Determination*

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

*B.*     *The ALJ's Consideration of the Opinion Evidence*

The ALJ properly weighed the opinions of nurse practitioner Jonathon Henning, ARNP, and physical therapist, Doug Keiser, MPT, in accordance with Social Security Ruling (SSR) 06-03p. AR 27, 30. That ruling concerns opinions from sources that do

not qualify as "acceptable medical sources." An "acceptable medical source" includes licensed physicians, licensed or certified psychologists, licensed podiatrists, or qualified speech-language pathologists. SSR 06-03p. Nurse practitioners and physical therapists do not fall within the Commissioner's definition of an "acceptable medical source." *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) ("[T]he nurse practitioner and therapists . . . are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations. Thus . . . their opinions were not entitled to greater weight.") (citations omitted). Instead, they are to be considered other sources who may provide evidence to show the severity of an impairment and how that impairment affects an individual's ability to function, but cannot provide medical opinions entitled to controlling weight. SSR 06-03P; 20 C.F.R. § 404.1527(d).

The factors set forth in 20 C.F.R. § 404.1527(d) explicitly apply only to the evaluation of acceptable medical sources, but can also be applied to evidence from other sources. These factors include how long and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty related to the individual's impairment and any other factors that tend to support or refute the opinion. 20 C.F.R. § 404.1527(d); SSR 06-3p. However, not every factor for weighing opinion evidence applies in every case. *Id.*

In this case, in accordance with SSR 06-3p, the ALJ considered the relevant factors in weighing Mr. Hennings' and Mr. Keiser's opinions and gave legitimate reasons for affording little weight to them. AR 29-30. On June 24, 2011, Mr. Hennings submitted a letter at the request of Mangrich's representative. AR 365-66. In that letter, Mr. Hennings stated that because of a recent fall, Mangrich was not able to work due to lower back pain. AR 366. Mr. Hennings further opined that Mangrich would have

difficulty standing or sitting in one position for more than thirty minutes and could not lift anything above her shoulders. *Id*.

In addition, Mr. Hennings completed a multiple impairment questionnaire on March 13, 2012. AR 393. In that questionnaire, Mr. Hennings indicated Mangrich could lift up to ten pounds occasionally and five pounds frequently and carry up to twenty pounds occasionally and five pounds frequently. AR 396. Mr. Hennings also stated that Mangrich could sit for two hours and stand and/or walk for two hours in an eight-hour workday, but that he must get up and move around every hour or two. AR 395.

In discussing Mr. Hennings' opinions, the ALJ first noted the limited treatment history. AR 30. Mr. Hennings reported that he began treating Mangrich on May 5, 2011. AR 393. Although he completed the impairment questionnaire in March 2012, Mr. Hennings indicated that the last time he examined Mangrich was on June 3, 2011. *Id*. The ALJ correctly noted that Mr. Hennings treated Mangrich for only about one month. AR 30.

Next, the ALJ found that Mr. Hennings' opinions were not supported by clinical findings or diagnostic testing. AR 30. Indeed, Mr. Hennings wrote "none" in the portion of the questionnaire that required him to identify the laboratory and diagnostic test results that supported his diagnosis. AR 394. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("[C]onclusory opinions not backed by medically acceptable clinical and laboratory diagnostic data carry limited weight in the disability analysis.").

The ALJ also found that Mr. Hennings' opinion was internally inconsistent with his own minimal findings. AR 30. Mr. Hennings' progress notes of June 3, 2011, state Mangrich reported that her back pain was relieved when taking Tramadol. AR 423. There is no indication that Mr. Hennings examined Mangrich's back, but he instead appeared to merely recite her subjective complaints. *Id*. *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (opinion based on claimant's subjective complaints of pain is entitled to little weight when unsupported by objective medical evidence). Although

Mr. Hennings' opinion indicated that Mangrich's back pain caused changes in ambulation and difficulty with lifting, bending and carrying, his treatment notes do not not contain objective evidence to support the alleged limitations. For all of these reasons, I find that the ALJ properly afforded little weight to Mr. Hennings' opinion.

The ALJ also properly considered the opinion of physical therapist Doug Keiser, MPT, who examined Mangrich on November 3, 2011. AR 29, 376. Mr. Keiser opined that Mangrich could not stand for more than forty-five minutes, lift more than five pounds above shoulder height or lift more than ten pounds above waist level. AR 29, 376. As the ALJ noted, however, Mr. Keiser further opined that Mangrich could function well if she "controlled her activities of daily living movements, varied her time on and off her feet and varied her motions." AR 29, 377. The ALJ gave this opinion minimal weight, as the evidence of record supported greater functional ability than Mr. Keiser reported. AR 29. For example, the ALJ found that Mangrich's daily activities exceeded the limitations Mr. Keiser reported. AR 28-29; *see Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014); *Owens v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) ("[claimant's] daily activities of daily living did not reflect the physical limitations found by [doctor]"). The ALJ also considered that Mr. Keiser only examined plaintiff one time. AR 29.

The ALJ also properly found that Mr. Hennings' and Mr. Keiser's opinions were not consistent with the record as a whole. AR 29-30. *See Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion."). In addition, the ALJ recognized that Mangrich received minimal medical treatment for her alleged impairments. AR 28-30; *see Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (noting that the claimant "has not consistently sought treatment for her condition since the alleged disability onset date."). Further, despite Mangrich's allegations of disabling symptoms and limitations, the objective evidence was relatively normal. For example, she saw treating physician, Gregory Harter, M.D., in February 2013 after falling on ice. AR 401. Mangrich

reported having "some" lower back pain, but she had no numbness, tingling, or weakness. AR 401. An examination revealed that she had decreased flexion, extension, twisting and turning secondary to pain. *Id*. She had no difficulty heel and toe walking, negative straight leg raising, a normal gait, full range of motion in the hips, knees and ankles and no tenderness in the lumbar spine. *Id*. In March 2013, Dr. Harter found that Mangrich had a normal gait and no weakness in the lower extremities, despite her alleged lower extremity pain. AR 403. She also had no difficulty walking, negative Romberg, full strength and range of motion in the lower extremities and normal coordination. AR 405-06.

Mangrich argues that the ALJ misinterpreted the medical evidence and, thus, did not adequately consider the opinion evidence. Doc. No. 14 at 16-21. Regarding her alleged neck pain, the ALJ found that the results of a cervical spine MRI, dated March 29, 2013, were inconsistent with Mr. Hennings' and Mr. Keiser's opinions. AR 27, 29-30. Mangrich contends the ALJ merely concluded that the MRI "revealed no significant disc herniation, spinal stenosis, or cord compression." Doc. No. 14 at 16 (citing AR 27). This contention is inaccurate. In fact, the ALJ provided a detailed discussion of the MRI, noting that it showed evidence of moderate neuroforaminal stenosis at C3-C4, posterior endplate spurring with compression of the ventral thecal sac and slight indentation of the cervical spinal cord with bilateral moderate neuroforaminal stenosis at C5-C6 and C6-C7. AR 27 (citing AR 407-408). The ALJ did not simply conclude that the MRI showed no stenosis or cord compression. Rather, the ALJ clearly evaluated the MRI and found that there was no *significant* evidence of stenosis or cord compression. *Id*. Moreover, the ALJ correctly noted that the MRI also showed no evidence of disc herniation. AR 27 (citing AR 407). The ALJ properly evaluated the MRI evidence.

The ALJ discussed other evidence relating to Mangrich's neck impairment that was also inconsistent with Mr. Keiser's and Mr. Hennings' opinions. For example, the ALJ noted that on March 27, 2013, when Dr. Harter found that Mangrich had decreased range

of motion in the neck, he described Mangrich as only "[m]ildly ill." AR 28 (citing AR 402). In addition, the ALJ noted that in October 2013, Mangrich had full range of motion in the upper extremities with normal muscle strength in the right upper extremity and 4/5 strength in the left upper extremity. AR 450. The ALJ also found that despite Mangrich's occasional cervical sensory neuropathy, an electromyography (EMG) test in March 2013 ruled out cervical motor radiculopathy, polyneuropathy or myelopathy. AR 27 (citing AR 412). Contrary to Mangrich's assertion, the ALJ provided a detailed discussion of the evidence contained in the record and incorporated appropriate limitations in the RFC to the extent consistent with the record as a whole. AR 27. The ALJ ultimately found that although Mangrich underwent a cervical fusion in 2007, four years before the alleged onset date, the medical evidence did not show that she had experienced any recurrence of her initial neck problem. AR 28.

Mangrich cites extensive evidence to support her argument that the ALJ did not properly weigh the opinion evidence. In effect, she is asking this court to impermissibly reweigh the medical evidence. *Wildman*, 596 F.3d at 964. I find that the ALJ properly considered and weighed all the opinion evidence in the record and gave specific, legitimate reasons for the weight assigned each opinion. Thus, substantial evidence supports the ALJ's evaluation of the medical source evidence. Mangrich has not shown that the ALJ erred by giving little weight to Mr. Hennings' and Mr. Keiser's opinions.

### C.     *The Absence of Treating or Examining Source Opinions*

Mangrich next contends that substantial evidence does not support the RFC assessment because there is not "some medical evidence" supporting it. In particular, Mangrich argues that the RFC is not based on any opinion from a treating or examining source. Doc. No. 14 at 21-24. I find that the ALJ's RFC assessment is supported by "some medical evidence" and other substantial evidence of record.

In arguing otherwise, Mangrich contends that the ALJ was required as a matter of law under *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), to obtain a treating or examining source medical opinion regarding her ability to perform work-related activities. In *Nevland*, the Commissioner made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id.* at 857. Various non-treating and non-examining physicians reviewed the claimant's records and gave opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court then noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered

consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)."

*Id.* [emphasis in original].

Here, in contrast to *Nevland*, the ALJ found that Mangrich is capable of performing her past work as a cashier, self-service. AR 32. Thus, the analysis ended at Step Four. The Eighth Circuit has consistently held that *Nevland* applies only in cases arising at Step Five of the sequential evaluation process. *See, e.g., Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Moreover, this court has held that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C12-4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013).

Mangrich contends, however, that *Nevland* should apply at Step Four because it was premised on the ALJ's duty to fully and fairly develop the record. Doc. No. 14 at 22. As explained above, *Nevland's* holding applies only at Step Five due to the burden shifting that occurs at that step. Mangrich is correct, however, that an ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Thus, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

According to Mangrich, the ALJ failed to fully and fairly develop the record by relying on the opinions of state agency medical experts because those opinions were rendered without the benefit of reviewing the more-recent medical evidence. Doc. No. 14 at 23. This argument is misguided. *See Long v. Colvin*, No. 12-04131-CV-C-REL, 2014 WL 856594, at *9 (W.D. Mo. Mar. 5, 2014) (citing *Chandler v. Comm'r of Soc. Soc.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ's hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Although the state agency medical experts, Jan Hunter, D.O., and Dee Wright, Ph.D., reviewed the evidence of record and issued their opinions in March 2012, the ALJ considered all evidence of record, including evidence generated after that date. AR 27-31, 91-96. Also, the ALJ decided to give great weight only to Dr. Hunter's opinion, finding that it was consistent with the record as a whole. AR 29; *see Smith v. Colvin*, 756 F.3d 621, 626-27 (8th Cir. 2014) (holding that ALJ could rely upon state-agency expert opinions after rejecting treating-source opinion).

The ALJ permissively gave only limited weight to Dr. Wright's opinion because it was inconsistent with evidence from consultative examiner Carroll Roland, Ph.D., who examined Mangrich in October 2011. AR 31, 367-371. Dr. Wright opined that Mangrich had moderate limitations in social interaction and the ability to accept instructions and respond appropriately to criticism from supervisors. AR 93-94. However, after examining Mangrich, Dr. Roland concluded that her ability to relate to supervisors or coworkers was unimpaired. AR 371. Dr. Roland also noted that Mangrich reported having good relationships with her siblings and 20-year-old son. AR 31, 369. Mangrich told Dr. Roland that she attended church regularly and got along well with authority figures. AR 31, 258, 260. The ALJ gave Dr. Roland's opinion great weight, finding it to be consistent with the record as a whole. AR 31.

The ALJ's decision demonstrates that the ALJ did not rely entirely on the state agency medical experts' opinion. Instead, the ALJ considered "the entire record," which included Dr. Roland's opinion and evidence generated subsequent to the state agency medical experts' opinions. AR 25. The record was sufficiently developed for the ALJ to make proper RFC findings and at least "some medical evidence" supports those findings. As such, the ALJ's determination of Mangrich's RFC was within the "zone of choice" and will not be disturbed. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

### D.     *Mangrich's Subjective Allegations*

Mangrich argues the ALJ failed to properly consider her subjective allegations. She contends the ALJ discredited those allegations without sufficient inconsistent evidence. She further contends that if her subjective allegations had been afforded the proper weight, a finding of disability would have been mandated.

### 1.     *Applicable Standards*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

To determine a claimant's credibility, the ALJ must consider:

(1)     the claimant's daily activities;

(2)     the duration, intensity and frequency of pain;

(3)     the precipitating and aggravating factors;

(4)     the dosage, effectiveness and side effects of medication; and

(5)     any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010).

The ALJ is not required "'to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints.'" *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (quoting *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (quoting *Lewis*, 353 F.3d at 647). When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not the court's role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted).

## 2.    *Analysis*

The ALJ found that the objective medical evidence did not support Mangrich's allegations of severe functional limitations due to back pain.  AR 20-35.  The ALJ pointed out that despite Mangrich's allegations of disabling symptoms, she sought minimal medical treatment for the two-year period prior to the ALJ's decision.  AR 28.  The Eighth Circuit Court of Appeals has held that infrequent medical treatment is a proper basis for discounting a claimant's subjective complaints.  *Kelley*, 372 F.3d 958, 961.

Mangrich asserts that the amount of medication she takes supports her claim of disability.  Doc. No. 14 at 26.  However, the ALJ noted that Mangrich was not taking narcotic pain medication, but primarily used only over-the-counter medication, such as Ibuprofen and muscle relaxers, which was inconsistent with her allegations of disabling pain.  AR 28, 367, 376, 423, 449, 451.  In fact, Mangrich testified that depending on her level of pain, she would take either Naproxen, Ibuprofen or Flexeril.  AR 59.  *Cruse v. Bowen*, 867 F.2d 1183, 1187 (8th Cir. 1989) (claimant's "allegations of disabling pain . . . are inconsistent with her minimal consumption of pain medication") (citing *Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986)).  Overall, the ALJ found that Mangrich's conservative treatment was inconsistent with her allegations of disability.  *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (claimant's conservative medical treatment detracted from credibility of complaints).

The ALJ also properly considered Mangrich's daily activities.  AR 28.  The ALJ noted that Mangrich lived alone and had no difficulty performing personal care tasks, preparing her own meals, performing light housecleaning or doing laundry.  AR 28, 255-56.  Mangrich also continued to drive an automobile and shopped for food and personal items weekly.  AR 257.  The Eighth Circuit has held that activities such as cooking, driving, shopping and doing laundry are inconsistent with subjective complaints of disabling pain.  *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010).

In addition, the ALJ noted that Mangrich has admitted that she could lift up to twenty pounds, which is consistent with light[1] work.  AR 28.  In fact, Mangrich has reported that she could lift more than twenty pounds.  AR 259, 369.  These admissions support the ALJ's finding that Mangrich could perform a reduced range of light work.  AR 25.  *See, e.g., Gagliardo v. Astrue*, No. 4:08 CV 411 DDN, 2009 WL 2170095, at *12 (E.D. Mo. July 20, 2009).

The ALJ also pointed out that Mangrich worked at multiple jobs in 2011 and 2012, after her alleged onset date of disability.  AR 29.  Indeed, Mangrich testified during the hearing that she was working 28-32 hours per week as a hotel desk clerk.  AR 29, 61.  *Schultz v. Astrue*, 479 F.3d 979, 982–83 (8th Cir. 2007) ("Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work.").  The ALJ noted that despite Mangrich's alleged difficulty standing and walking, she admitted that her job duties included cleaning the hotel lobby and the restrooms.  AR 29, 54, 61.  It was not unreasonable for the ALJ to find that plaintiff's work activity was inconsistent with her claim of disabling pain.  *See Goff*, 421 F.3d at 792; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (citation omitted).

Lastly, Mangrich contends that the ALJ's credibility finding is flawed because the ALJ did not adequately consider the five lay witness statements provided by Mangrich's coworker, three sisters and son.  AR 31, 301, 302, 303, 304, 305; Doc. No. 14 at 25-26.  Specifically, Mangrich argues that the ALJ impermissibly used boilerplate language in her decision when she addressed the lay witnesses' statements.  AR 31; Doc. No. 14 at 25.  However, boilerplate language is not reversible error when accompanied by thorough discussion.  *See, e.g., Bernard v. Astrue*, 974 F. Supp. 2d 1247, 1260 (D. Minn. 2013).  Here, as discussed above, the ALJ properly discussed the factors that guided her credibility determination, including Mangrich's course of treatment, objective

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 404.1567(c).

medical evidence, activities of daily living and opinion evidence. An ALJ is entitled to discount corroborating testimony on the same basis used to discredit the claimant's testimony. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

I find that the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for her assessment of Mangrich's credibility. As such, the ALJ's credibility determination is entitled to deference and will not be disturbed.

## VI.    CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Mangrich was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Mangrich and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 12th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE